STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey Allen HOUSE,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP2202–CR. Oral argument April 24, 2007.
—Decided June 27, 2007.*

2007 WI 79

(Also reported in 734 N.W.2d 140.)

1

For the defendant-appellant-petitioner there was a brief by *Michael J. Steinle* and *Terschan, Steinle & Ness,* Milwaukee, and oral argument by *Michael J. Steinle.*

For the plaintiff-respondent the cause was argued by *Juan B. Colas,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Jeffrey House, seeks review of an unpublished court of appeals decision affirming a judgment convicting him of conspiracy to deliver cocaine.[1] House contends that the court of appeals erred in letting stand the circuit court's denial of his motion to suppress telephonic evidence on the ground that the evidence was obtained pursuant to an invalid wiretap order. He argues that because the wiretap order authorized interceptions of communica-

---

[1] *See State v. House,* No. 2005AP2202–CR, unpublished slip opinion (Wis. Ct. App. August 3, 2006)(affirming a judgment of the circuit court for Milwaukee County, Charles F. Kahn, Jr., Judge).

tions for crimes not specifically enumerated in Wisconsin's wiretapping statutes, the order was unlawful and evidence from the wiretap should be suppressed.

¶ 2.   We determine that the circuit court erred in authorizing a wiretap for offenses not enumerated in Wis. Stat. § 968.28.[2] However, we also determine that the authorization of a wiretap for non-enumerated offenses does not warrant suppression of the evidence obtained from the wiretap in this case. The order included both enumerated and non-enumerated offenses, and it contained sufficient probable cause for the enumerated offenses. Further, the evidence obtained by wiretap was for enumerated offenses, and charges were brought only for enumerated offenses. Thus, the failure does not conflict with the statutory objectives of protecting privacy and limiting wiretapping to situations clearly calling for the use of such an extraordinary device. Accordingly, we affirm the court of appeals.

I

¶ 3.   This case stems from an extended investigation of a drug-trafficking operation which focused on Samuel Caraballo and Felix Rivera. In March 2004, a detective in the Milwaukee Police Department applied to the circuit court of Milwaukee County for an order authorizing interception of communications from a cell phone associated with Caraballo. The application was based on an investigation by Milwaukee's High Intensity Drug Trafficking Area Drug Gang Task Force (HIDTA).

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

¶ 4. The affidavit supporting the application describes a drug-trafficking enterprise involving at least a dozen individuals and multiple businesses. It describes HIDTA's use of a variety of investigative techniques to gain information about the operation, including confidential informants, controlled purchases, physical surveillance, a John Doe investigation, garbage searches, and traces on telephone numbers associated with Caraballo. It also explains why those procedures and other possible investigative tools had failed, appeared unlikely to succeed if attempted, or were too dangerous to use.

¶ 5. The application for the wiretap asserts that the evidence produced by the HIDTA investigation was sufficient to show probable cause that the subjects had committed, were committing, and would continue to commit violations of a number of state drug trafficking statutes.[3] These include § 961.41(1) (manufacture, distribution or delivery), § 961.41(1m) (possession with intent to manufacture, distribute or deliver) and

---

[3] The affidavit in the application reads as follows:

[Subjects] and others, as yet unknown, have committed, are committing and will continue to commit state violations of Wisconsin Statutes § 961.41[(1)] (Manufacture, Distribution or Delivery), § 961.41(1m) (Possession With Intent to Manufacture, Distribute or Deliver) and § 961.42 (Keeping a Place for Using, Manufacturing, Keeping or Delivering) for controlled substances including, but not limited to § 961.16(2)(b) (cocaine), § 961.14(4)(am) (. . . "Ecstasy" or MDMA) and § 961.14(3)(k)(heroin); §§ 939.31 and 961.41(1x)(Conspiracy), and §§ 946.83 and 946.85 (Racketeering and Continuing Criminal Enterprises) as well as federal violations of Title 21, United States Code, §§ 841(a)(1)(Possession with the Intent to Distribute and Distribution of Controlled Substances, including but not limited to cocaine, Ecstasy (MDMA) and heroin), 846 (conspiracy) and 843(b)(Use of a Communication Facility to Facilitate Controlled Substance Felonies), and violations of Title 18, United States Code, §§ 1952 (Interstate and Foreign Travel of Transportation in Aid of Racketeering Enterprises), and 1956 and 1957 (Money Laundering).

§ 961.42 (keeping a place for using, manufacturing, keeping or delivering) for controlled substances, including cocaine, ecstasy, and heroin. The application also stated that the defendants had violated state conspiracy and racketeering statutes, including Wis. Stat. §§ 939.31 and 961.41(1x) (conspiracy), and §§ 946.83 and 946.85 (racketeering and continuing criminal enterprises).

¶ 6. In addition to the violations of state law, the application asserted violations of federal statutes, including 21 U.S.C. §§ 841(a)(1)(possession with the intent to distribute and distribution of controlled substances), 846 (conspiracy), and 843(b)(use of a communication facility to facilitate controlled substance felonies). Further, it averred probable cause for violations of federal racketeering and money laundering laws, 18 U.S.C. §§ 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises), and 1956 and 1957 (money laundering). The application for the wiretap was approved by the district attorney for Milwaukee County and the state attorney general.

¶ 7. The circuit court approved the wiretap for a 30–day period. The order authorizing the wiretap incorporates the language of the application and approves wiretapping for all of the crimes set forth in the application.[4] The State requested and received two extensions of the wiretap.

---

[4] The order authorizing the wiretap provides in relevant part:

It is hereby ordered:

That law enforcement officers of the High Intensity Drug Trafficking Area Drug Gang Task Force (HIDTA) . . . be and they are hereby authorized . . . to intercept the wire (cellular phone) communications of [subjects] and others, yet unknown . . . such communication concerning or related to state violations of Wisconsin Statutes § 961.41[(1)] (Manufacture, Distribution or Delivery), § 961.41(1m) (Possession With Intent to Manufacture, Distribute or Deliver) and

¶ 8. In May 2004, the State filed a complaint naming over 30 people as defendants. The 15 counts in the complaint all pertain to drug trafficking and conspiracy to traffic drugs. The complaint did not include charges for money laundering, racketeering, or continuing criminal enterprise. House was charged with two counts of conspiracy to deliver cocaine. The complaint describes five calls that House made to Caraballo's phone in which House requests cocaine or arranges to receive cocaine from Caraballo.

¶ 9. House moved to suppress evidence obtained from the wiretap on two grounds. First, he asserted that the order for the wiretaps was unlawful because it authorized wiretaps for crimes not enumerated in Wis. Stat. § 968.28. Second, he argued that the extensions for the wiretap were unlawful because they failed to conform to the requirement under Wis. Stat. §§ 968.30 and 968.28 that applications for extensions receive approval from the district attorney and the attorney general. The circuit court denied the motion with regard to the first ground. However, it granted House's

§ 961.42 (Keeping a Place for Using, Manufacturing, Keeping or Delivering) for controlled substances including, but not limited to, § 961.16(2)(b) (cocaine), § 961.14(4)(am) (3,4–methylene-dioxymethampetamine: "Ecstasy" or MDMA) and § 961.14(3)(k) (heroin); §§ 939.31 and 961.41(1x) (Conspiracy), and §§ 946.83 and 946.85 (Racketeering and Continuing Criminal Enterprises) as well as federal violations of Title 21, United States Code, §§ 841(a)(1) (Possession with the Intent to Distribute and Distribution of Controlled Substances, including but not limited to cocaine, Ecstasy (MDMA) and heroin), 846 (Conspiracy), and 843(b) (Use of a Communication Facility to Facilitate Controlled Substance Felonies), and violations of Title 18, United States Code, §§ 1952 (Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises), and 1956 and 1957 (Money Laundering) . . . .

motion to exclude the evidence obtained from the wiretap during its extension.[5]

¶ 10.   House subsequently entered a guilty plea to one count of conspiracy to deliver cocaine. He was sentenced to two years, six months initial confinement and three years, six months extended supervision. He appealed the denial of his suppression motion, arguing that money laundering, racketeering, and continuing criminal enterprise were outside the scope of Wisconsin's wiretapping statutes. The court of appeals questioned the validity of the State's claim that such crimes are encompassed in "dealing in controlled substances," which is within the scope of the statutes. Nonetheless, it affirmed House's judgment of conviction. It determined that including offenses not enumerated in Wisconsin's wiretap statutes in the wiretap order did not render the order unlawful.

II

■
¶ 11.   In this case we must determine whether a circuit court erred in authorizing a wiretap for offenses not enumerated in Wisconsin's wiretap statutes, and if so, whether suppression of evidence obtained by the wiretap is warranted. In resolving these questions we interpret statutes and apply those statutes to the particular facts of this case. Questions of statutory interpretation and application present questions of law which we review independently of the determinations rendered by the circuit court and the court of appeals. *Kierstyn v. Racine Unified School Dist.*, 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999).

---

[5] The State does not challenge the circuit court's order excluding the evidence obtained during the wiretap extension.

## III

¶ 12.　House contends that because money laundering, racketeering, and continuing criminal enterprise are not specifically enumerated crimes for which wiretaps are authorized under the Wisconsin wiretap statutes, the order authorizing the wiretap in this case was unlawful. We begin our analysis by examining the words of Wisconsin's wiretap statute, Wis. Stat. § 968.28. It states in relevant part that a circuit court may authorize wiretaps only where the wiretap may provide, or has provided, evidence of certain enumerated crimes:

> The authorization [of an interception] shall be permitted only if the interception may provide or has provided evidence of the commission of the offense of homicide, felony murder, kidnapping, commercial gambling, bribery, extortion, dealing in controlled substances or controlled substance analogs, a computer crime that is a felony under s. 943.70, or any conspiracy to commit any of the foregoing offenses.

¶ 13.　A plain reading of the statute reflects that the crimes of money laundering, racketeering and continuing criminal enterprise are not specifically enumerated crimes. Nevertheless, the State argues that a circuit court may authorize wiretaps for those crimes insofar as they constitute "dealing in controlled substances," which is an enumerated offense under § 968.28. We disagree. Not only is such an interpretation inconsistent with the plain words of the statute, it also contradicts the legislative intent that § 968.28 be a restrictive statute. By authorizing a wiretap for money laundering, racketeering, and continuing criminal enterprise, the circuit court expanded the scope of a wiretap beyond the statutory limit. It therefore erred in providing such an authorization.

10

¶ 14.   The interception of wire, oral, and electronic communications is governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which is codified at 18 U.S.C. Part I, Ch. 119, § 2510, et sub. (2006). Wisconsin's electronic surveillance statutes are patterned after Title III. Our interpretation of the state statutes therefore benefits from the legislative history and intent of Title III and from federal decisions considering Title III. *State v. Gilmore,* 201 Wis. 2d 820, 825, 549 N.W.2d 401 (1996).

¶ 15.   Congress intended that Title III be construed strictly because it knew that it was creating an investigative mechanism which potentially threatened the constitutional right to privacy. "[I]t carefully wrote into the law the protective procedures for the issuance of warrants which the Supreme Court had declared in *Katz v. United States* [389 U.S. 347 (1967)] and *Berger v. New York* [388 U.S. 41 (1967)] were constitutional precondition[s] of . . . electronic surveillance." *United States v. Capra,* 501 F.2d 267, 277 (2d Cir. 1974)(internal quotations omitted).

¶ 16.   Congress also intended to limit wiretapping to investigations of certain major offenses. S. Rep. No. 1097, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2186. Title III circumscribes the authority of both federal and state agencies. The authority of federal agencies is set forth in subsection (1) of 18 U.S.C. § 2516 and the authority of the state agencies is set forth in subsection (2).

¶ 17.   Each of the offenses enumerated in 18 U.S.C. § 2516(1) was chosen by Congress "either because it is intrinsically serious or because it is characteristic of the operations of organized crime." S. Rep. No. 1097 at 2186. In enacting 18 U.S.C. § 2516(2), Congress intended that

any state statute permitting wiretaps "must meet the minimum standards reflected as a whole in the proposed chapter," and that states "would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation." S. Rep. No. 1097 at 2187.

¶ 18. Thus, 18 U.S.C. § 2516(2) is intended to provide two things. It assures that states would allow wiretapping only for crimes that are at least as "intrinsically serious" or as "characteristic of organized crime" as those crimes enumerated in § 2516(1). It also allows, if the legislatures so choose, that state statutes may place greater restrictions on wiretaps than do the federal statutes. However, states may not enact legislation broader than that which is authorized for the states under 18 U.S.C. § 2516(2).

¶ 19. Title III outlines the requirements that federal agencies must meet in order to receive authorization for interceptions and designates by statute number the offenses for which wiretaps may be authorized. 18 U.S.C. § 2516(1). The enumerated offenses are set forth in subparagraphs (a) through (f). For instance, subparagraph (a) includes those offenses that fall within the national security category, including offenses involving espionage, sabotage, and treason. Subparagraph (b) includes the offenses of murder, kidnapping, robbery and extortion. Subparagraphs (c), (d), and (e) enumerate scores of federal offenses, including the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic drugs, marijuana, or other dangerous drugs, racketeering, and money laundering. Finally, subparagraph (f) includes any conspiracy to commit the specifically enumerated federal offenses.

¶ 20. Subparagraph (2) of 18 U.S.C. § 2516 authorizes states to enact laws governing state law enforcement agents' use of wiretaps and sets forth the following requirements:

12

The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of <u>murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs</u>, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.

18 U.S.C. § 2516(2)(emphasis added).

¶ 21.   Wisconsin's wiretapping statutes reflect the provisions set forth in 18 U.S.C. § 2516(2).[6] Under Wis. Stat. § 968.30(3)(a) a court may not enter an order

---

[6] The Senate Report accompanying Title III describes § 2516(2) as providing the template for state laws providing for wiretaps. S. Rep. No. 1097, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2187. In an analysis of 1969 Assembly Bill 860, which established Wisconsin's wiretapping statutes, then Attorney General Robert W. Warren echoed this view, stating that under the Wisconsin law "[a]uthorization can be permitted only in certain crimes which have been set out in the federal statute authorizing the states to adopt these regulations." Legislative Reference Bureau drafting file for ch. 427, Laws of 1969.

for a wiretap unless "[t]here is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in s. 968.28." In turn, § 968.28 provides that interceptions of communications may be authorized for only a limited group of offenses:

> homicide, felony murder, kidnapping, commercial gambling, bribery, extortion, dealing in controlled substances or controlled substance analogs, a computer crime that is a felony under s. 943.70, or any conspiracy to commit any of the foregoing offenses.

¶ 22. It is clear that the legislature intended that the offenses enumerated in § 968.28 be patterned after those in 18 U.S.C. § 2516(2). Thus, § 968.28 sets forth mostly the same crimes, in the same order, and in largely the same language as the crimes listed in 18 U.S.C. § 2516(2). However, unlike its federal counterpart, the state wiretap statute does not include the offense of robbery.

¶ 23. As noted, Title III permits states "to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation." *United States v. Capra*, 501 F.2d at 276 (quoting S. Rep. No. 1097, *supra*, 2187). Wisconsin's legislature allowed that most of those crimes explicitly designated by 18 U.S.C. § 2516(2) could be the basis for a wiretap. However, the legislature did not permit circuit courts to authorize wiretaps for the purpose of providing evidence for robbery, even though robbery is an offense for which states may allow wiretapping under 18 U.S.C. § 2516(2).

¶ 24. In addition, § 2516(2) of the federal statute provides that states may authorize wiretaps for "other crime[s] dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated

14

in any applicable State statute authorizing such interception." 18 U.S.C. § 2516(2). Consistent with those requirements, in 1983 the Wisconsin legislature amended § 968.28 to include "a computer crime that is a felony under s. 943.70." 1983 Wis. Act 438. Computer crimes are dangerous to life, limb, or property,[7] felony computer crimes are punishable by imprisonment for more than one year,[8] and the state statute authorizing wiretaps designates computer crimes as subject to wiretapping.

¶ 25. The legislative history of the computer crimes provision demonstrates the intent that Wisconsin's wiretapping statutes be restrictive in accordance with Title III. The drafting instructions for 1983 Wis. Act 438 reflected the federal requirement that offenses must be specifically enumerated in the statute in order to obtain authorization for a wiretap:

To: Bruce

From: Dick White

Drafting Instructions:

. . . .

Authorize use of wiretaps in computer crime cases where there is a significant risk of causing great bodily harm because of the crime. (Cannot currently get a wiretap in these cases—it's not a specifically authorized crime for which wiretapping can be authorized . . . .)

Legislative Reference Bureau drafting file for 1983 Wis. Act 438.

---

[7] *See* Wis. Stat. §§ 943.70(2)(b)2.-4.

[8] *See* Wis. Stat. §§ 943.70(2)(b)2.-4., § 939.50 (classification of felonies).

¶ 26. A "Note to File" also recognizes that the federal legislation limits the state's ability to authorize wiretapping by the enumeration of only certain offenses. "18 U.S.C. 2516—limits state regulation of wiretapping to certain offense[s]." A subsequent drafter's note reflects that the original draft of the amendment needed to be modified in keeping with the "restrictive" approach of the legislation:

> DRAFTER'S NOTE: When you review this draft, please note the following: (1) The wiretap revision is more restrictive than you requested. The federal law (18 U.S.C. 2516) limits the states to covering offenses which are punishable by imprisonment for more than one year. I limited the change accordingly . . . .

Legislative Reference Bureau drafting file for 1983 Wis. Act 438.

¶ 27. Thus, the legislature carefully demarcated the crimes for which wiretaps may be authorized under § 968.28. It followed the provisions in Title III, but deliberately did not include every crime contemplated in 18 U.S.C. § 2516(2). Further, where § 968.28 allows that a wiretap can be authorized for a crime not explicitly set forth in the federal statute, it carefully complies with the requirements of § 2516(2) providing for such additions.

¶ 28. The State's view that the circuit court may authorize wiretaps for racketeering, continuing criminal enterprise, and money laundering because those crimes constitute "dealing in controlled substances" conflicts with the narrowly circumscribed scope of § 968.28. By authorizing a wiretap for racketeering, continuing criminal enterprise, and money laundering, the circuit court expanded the scope of the wiretap beyond the limit authorized by law.

16

¶ 29.   The State correctly asserts that dealing in controlled substances may provide a foundation for racketeering or continuing criminal enterprise charges and that money laundering may be an aspect of a drug dealing operation. However, those offenses may also be based on crimes not enumerated in § 968.28. Thus, including them in an order authorizing a wiretap in effect authorizes a wiretap for other crimes that would support a racketeering, continuing criminal enterprise, or money laundering charge.

¶ 30.   As an example, by including racketeering in the authorization, the circuit court potentially incorporated more than one hundred additional criminal offenses. Section 946.82 defines expansively "racketeering activity." Among the statutes listed as potentially constituting racketeering are §§ 943.32 (Robbery), 943.38 (Forgery), 943.76 (Infecting animals with a contagious disease), 944.34 (Keeping place of prostitution), and 946.49 (Bail jumping). An order that authorizes the interception of communications "concerning or related to" racketeering violations, therefore, has the effect of authorizing the interception of communications concerning or related to robbery, forgery, infecting animals with a contagious disease, keeping a place of prostitution, and bail jumping. These offenses are clearly not among those for which the legislature has authorized wiretapping. Moreover, as noted above, the legislature conspicuously declined to include robbery in the list of crimes for which wiretapping may be authorized, despite the fact that Title III expressly provides that state wiretapping statutes may include robbery. 18 U.S.C. § 2516(2).

¶ 31.   The wiretap order also authorized interceptions of communications concerning continuing criminal enterprise and violations of 18 U.S.C. §§ 1956 and

1957, two federal money laundering statutes. Similar to the effect of authorizing interceptions for racketeering, authorizing the interception of communications for continuing criminal enterprise and money laundering in effect authorizes interceptions for crimes not enumerated in § 968.28. Further, while "dealing in controlled substances" may provide a foundation for the crimes of money laundering, racketeering, and continuing criminal enterprise, those crimes encompass a great deal more than dealing in controlled substances. Interpreting "dealing in controlled substances" as including racketeering, continuing criminal enterprise, and money laundering therefore conflicts with the restrictive nature of the Wisconsin statutes.

¶ 32.   The State also argues that, even if "dealing in controlled substances" does not include the offenses of money laundering, racketeering, and continuing criminal enterprise as a general matter, in this case it is clear that those crimes are all part of a drug trafficking operation. With this view, only those money laundering, racketeering, and continuing criminal enterprise activities related to drug trafficking would be open to interception here. This argument is unpersuasive. It is contrary to the language of the order, which does not limit interceptions of communications regarding money laundering, racketeering, and continuing criminal enterprise to instances where those crimes are related to drug trafficking.[9]

---

[9] Limiting a wiretap order to enumerated offenses need not have the effect of limiting the use of evidence gathered pursuant to a lawful wiretap order to those crimes specifically set out in the order. Wis. Stat. § 968.29(5) provides that when an agent intercepts:

> communications relating to offenses other than those specified in the order . . . . The contents and any evidence derived therefrom

¶ 33.   In sum, we conclude that money laundering, racketeering, and continuing criminal enterprise are not specifically enumerated offenses in § 928.28 and that those offenses are not included within "dealing in controlled substances," which is an enumerated offense. Such a construction would contradict the legislative intent that § 968.28 be a restrictive statute and would result in expanding the scope of a wiretap authorization beyond the statutorily imposed limitations. Accordingly we determine that the circuit court erred in authorizing a wiretap for offenses not enumerated in Wis. Stat. § 968.28.

## IV

¶ 34.   Having determined that the circuit court erred in authorizing a wiretap for crimes not enumerated in § 968.28, we turn to the question of whether suppression is required. House asserts that the suppression of any evidence resulting from the wiretap is required under § 968.30(9)(a). Our interpretation of the statutes and case law leads us to conclude that suppression is not warranted in this case.

¶ 35.   We make this determination because the non-enumerated crimes in the order are surplusage. The wiretap order includes both enumerated and non-enumerated offenses. It is undisputed that there was

---

may be used under sub. (3) [pertaining to use of interceptions in court] when authorized or approved by the judge who acted on the original application where the judge finds on subsequent application, made as soon as practicable but no later than 48 hours, that the contents were otherwise intercepted in accordance with [Wisconsin's wiretapping statutes or Title III].

We do not address, however, what the result would be in situations other than presented in this case.

19

probable cause for the enumerated offenses. There is no indication that communications regarding non-enumerated offenses were intercepted, and no non-enumerated offenses were charged. Thus, the statutory objectives of protecting privacy and restricting wiretaps to situations clearly calling for their use have been fulfilled despite the violation of § 968.28.

¶ 36.  In addressing this issue, we look first to the statutory provision for suppression. Wisconsin Stat. § 968.30(9)(a) sets forth the conditions under which information gathered by wiretap may be suppressed. It provides for suppression "on the grounds that the communication was unlawfully intercepted; the order of authorization or approval under which it was inter-cepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval. . . ."[10] It is undisputed that the wiretaps in this case were made in conformity with the authoriza-tion order.

¶ 37.  Further, the order authorizing the wiretap was not insufficient on its face. Section 968.30(4) lists the things that must be specified in an order authoriz-

---

[10] This language mirrors the suppression provision in 18 U.S.C. 2518(10)(a). That section provides:

Any aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

. . . If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. . . .

ing a wiretap. It requires, for example, that an order specify the person to be wiretapped, the organization authorized to perform the wiretap, and the person authorizing the application for the wiretap. Wis. Stat. §§ 968.30(4)(a) and (d). Relevant to this case is the requirement that the order specify the "the particular offense to which [the wiretap] relates." Wis. Stat. § 968.30(4)(c). In this case, the order did specify the offenses to which the wiretap related. The error was not that the order was "insufficient on its face," which is a potential ground for exclusion under § 968.30(9)(a). Rather, the error was that by referencing non-enumerated offenses, the order included too much.

¶ 38.  Because the evidence here cannot be excluded on the grounds that the interception did not conform with the order or that the order was insufficient on its face, exclusion would have to be on the ground that "the communication was unlawfully intercepted." Although the circuit court erred in authorizing a wiretap for offenses not enumerated in § 968.28, not every failure to follow wiretapping statutes makes an interception unlawful such that suppression is required. *United States v. Chavez*, 416 U.S. 562, 574–75 (1974). Rather, whether a violation of the wiretapping statutes requires suppression depends upon whether the statutory purpose has been achieved despite the violation. *United State v. Cunningham*, 113 F.3d 289, 293–94 (1st Cir. 1997)(quoting *United States v. Johnson*, 696 F.2d 115, 121 (D.C. Cir. 1982).

¶ 39.  In *United States v. Giordano*, 416 U.S. 505 (1974), an application for a wiretap stated that an Assistant Attorney General specially designated by the Attorney General had authorized the application, pur-

21

suant to 18 U.S.C. § 2516(1).[11] 416 U.S. at 508–09. In fact, the application had been reviewed and authorized by the Executive Assistant to the Attorney General, who did not have statutory authority to authorize wiretap applications. *Id.* at 509–10. The Court determined that the interceptions were unlawful and suppression was warranted because the order failed to satisfy a statutory requirement "that directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Id.* at 527.

¶ 40.    In contrast, *Chavez* involved an application for a wiretap that indicated a designated Assistant Attorney General had approved the application, when in fact the Attorney General had approved the application. 416 U.S. at 565–66. The Court determined that where it is clear that the Attorney General authorized the application for a wiretap, the misidentification of the approving official on the application does not undermine the purpose of statute. Thus, the Court concluded that the misidentification did not render interceptions unlawful and that suppression of evidence from the wiretap would be error. *Id.* at 579–80.

¶ 41.    *United States v. Donovan,* 429 U.S. 413 (1976), involved an application for a wiretap in which the Government failed to comply with 18 U.S.C.

---

[11] Under 18 U.S.C. § 2516(1), applications for wiretaps may be authorized by:

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General . . . .

§ 2518(1)(b)(iv), which requires that the Government include in any wiretap application "the identity of the person, if known, committing the offense and whose communications are to be intercepted." *Id.* at 416. The Court determined that so long as the authorizing court fulfills the statutory requirements to determine that normal investigative techniques are unsuccessful and to find probable cause,[12] the failure to identify a person under § 2518(1)(b)(iv) does not render a wiretap unlawful. *Id.* at 436. As in *Chavez,* the failure to comply with the statute did not render the interceptions unlawful, and did not require suppression. *Id.* at 439.

¶ 42.    Federal courts analyzing the Title III suppression provisions in light of *Giordano, Chavez,* and *Donovan* have determined that "violations of even . . . central requirements do not mandate suppression if the Government demonstrates to the court's satisfaction that the statutory purpose has been achieved despite the violation." *Cunningham,* 113 F.3d at 293–94; *United States v. Lopez,* 300 F.3d 46, 56 (1st Cir. 2002); *see also United States v. Chun,* 503 F.2d 533, 542 (9th Cir. 1974).

¶ 43.    The few federal courts that have addressed the question of whether including non-enumerated offenses in a wiretap order requires suppression have come to varying conclusions. House cites to two federal cases for the view that interceptions made pursuant to an order that references non-enumerated offenses are subject to suppression, *United States v. Millstone,* 684 F. Supp. 867 (W.D.Pa. 1988)(reversed on other grounds), and *United States v. Ward,* 808 F. Supp. 803 (S.D.Ga. 1992).

¶ 44.    In *Millstone,* a Pennsylvania court authorized a wiretap based on a finding of probable cause

---

[12] *See* 18 U.S.C. §§ 2518(3)(a)-(d).

that the subject of the wiretap was committing three crimes: prostitution, racketeering, and conspiracy to commit prostitution and racketeering. 684 F. Supp. at 869. The court determined that the wiretap was illegal because prostitution and racketeering are not enumerated offenses within the scope of 18 U.S.C. § 2516(2), and that any evidence from such a wiretap was inadmissible. *Id.* at 870. *Millstone,* however, is inapt. In that case, the wiretap order referenced only non-enumerated offenses. This contrasts with the present case, where the non-enumerated offenses are surplus to an enumerated offense.

¶ 45.  In *Ward,* the court authorized wiretaps based on applications asserting, among other offenses, violations of 18 U.S.C. § 1953 (interstate transportation of wagering material) and 26 U.S.C. § 7201 (tax evasion), neither of which are enumerated in 18 U.S.C. § 2516(1). Citing to *Giordano,* the court determined that Congress intended to restrict wiretap authorizations to specific offenses, and that an order authorizing interceptions for non-enumerated offenses warrants suppression. 808 F. Supp. at 806.

¶ 46.  The most recent district court to address the question is the Eastern District of Wisconsin, which reached a different conclusion than the *Ward* court. In *United States v. O'Neill,* 27 F. Supp. 2d 1121 (E.D. Wis. 1998), an order authorized a wiretap for numerous offenses set forth in 18 U.S.C. § 2516(1). In addition, the order listed 18 U.S.C. § 842(h) (concerning stolen explosives), which is not enumerated in the statute. *Id.* at 1127. The court denied the defendant's motion to suppress, rejecting the view that "reference to a non-listed offense in the surveillance authorizations completely invalidates those authorizations." *Id.*

¶ 47.    The Tenth Circuit has addressed a related issue. In *United States v. Smart,* 278 F.3d 1168 (10th Cir. 2002), federal investigators submitted an application for a court order authorizing a wiretap to investigate several offenses, including violations of 42 U.S.C. § 1320a-7b (fraud relating to federal health care programs). *Id.* at 1170. That offense is not enumerated in 18 U.S.C. § 2516(1). The order authorizing the wiretap, however, did not reference the non-enumerated offense. The Tenth Circuit concluded that the order was not unlawful and that suppression was unwarranted. *Id.* at 1174. However, the court specifically declined to address the question of whether an order referencing non-enumerated offenses would merit suppression. "The question of whether an order authorizing wiretapping in investigation of both enumerated and non-enumerated offenses would survive review is saved for another day." *Id.*

¶ 48.    With scant and equivocal law on the effect of including non-enumerated offenses in a wiretapping order, we must decide whether the purposes of the wiretapping statutes have been fulfilled despite the violation of § 968.28 by including surplus, non-enumerated offenses in the wiretap order. We determine that under the circumstances here, the purposes have been fulfilled.

¶ 49.    The court in *United States v. Escobar-de Jesus* discussed the purposes that Title III seeks to achieve:    "the statutory objectives of protecting privacy interests and ensuring that intercept procedures are used only in 'those situations clearly calling for the employment of this extraordinary investigative device.'" 187 F.3d 148, 171 (1st Cir. 1999)(quoting *Giordano,* 416 U.S. at 527); *see Lopez,* 300 F.3d at 56.

25

¶ 50. Here the order contains both enumerated and non-enumerated offenses. There is no question that the foundation of the wiretap application and order in this case is dealing in controlled substances. The application for the wiretap detailed an extensive drug trafficking operation and an elaborate law enforcement investigation of that operation. The focus of the application and the order was distribution and possession with intent to distribute cocaine, heroin, and ecstasy, as well as conspiracy to commit those crimes.

¶ 51. Those crimes are all squarely within the scope of § 968.28. Because the focus of this case was on enumerated crimes, the intercept procedures were used in a situation "calling for the employment of this extraordinary investigative device." *Giordano*, 416 U.S. at 527. The addition of the non-enumerated crimes does not undermine this purpose.

¶ 52. Likewise, inclusion of the non-enumerated offenses here does not undermine the purpose of protecting privacy interests. As the court in *Escobar-de Jesus* noted:

> To the extent that Title III is designed to protect privacy interests similar to those reflected in the Fourth Amendment . . . that statutory purpose was served by the district court's finding of probable cause to intercept and by the order's inclusion of other items of particularity, including the identity of the person whose communications were to be intercepted, the nature and location of the telephone line to be intercepted, a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which the communications relate . . . .

187 F.3d at 171 (internal citations omitted).

¶ 53. In order to authorize a wiretap, § 968.30(3) requires that the circuit court find probable cause to believe that (a) a person is committing, has committed, or is about to commit a crime, (b) communications regarding the crime will be intercepted, (c) other investigative techniques have failed or are unlikely to succeed, and (d) the wiretapped facilities are used or will be used in connection with the crimes. Here, there is no question that there was probable cause for each of these with respect to the enumerated drug offenses. The error in this case is one of referencing surplus offenses alongside the enumerated offenses for which there was ample probable cause.

¶ 54. Moreover, there is no contention that including the offenses led to additional interceptions in this case. House makes no claim, and there is nothing in the record before us to suggest, that the wiretap intercepted communications beyond those pertaining to dealing in controlled substances. The evidence obtained by the wiretap addressed only the properly enumerated offenses.

¶ 55. Additionally, House has been charged only with crimes enumerated in § 968.28. House was charged with conspiracy to deliver cocaine. He was not charged with money laundering, racketeering, or continuing criminal enterprise. The error of including non-enumerated crimes in the authorization for the wiretap appears to have no consequence as to either the evidence obtained or to the charges that were brought.

¶ 56. Thus, the addition of the non-enumerated offenses does not undermine the statutory purpose of privacy protection in this case. The probable cause requirements under § 968.30(3), which serve to protect privacy, were met. Further, with respect to House, the

communications intercepted and the crimes charged were within the scope of § 968.28.

¶ 57.   We find support for this view in cases involving misrepresentations in wiretap applications. In *Franks v. Delaware,* 438 U.S. 154 (1978), the Supreme Court addressed the circumstances in which it is appropriate to suppress evidence derived from a warrant issued on the basis of an affidavit that contained false statements concerning probable cause. *Id.* at 155–56. The Court determined that even where a defendant makes a sufficient allegation that an affidavit is based on a deliberate misrepresentation, a hearing may not be required. Rather, when information "that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable case, no hearing is required." *Id.* at 171–72.

■

¶ 58.   The *Franks* test applies to wiretap applications. *United States v. Small,* 423 F.3d 1164, 1172 (10th Cir. 2005), *United States v. Southard,* 700 F.2d 1, 8 (1st Cir. 1983). Thus, a deliberately or recklessly false statement made in an affidavit to obtain a wiretap order "does not in and of itself invalidate that . . . order, or compel suppression of evidence obtained upon its execution." *United States v. Ippolito,* 774 F.2d 1482, 1485 (9th Cir. 1985). Rather, false statements that are material to a finding of probable cause will invalidate the order. *Id.*

¶ 59.   We acknowledge that the *Franks* test applies to false statements rather than to the inclusion of non-enumerated offenses. Nonetheless, its methodology is relevant here. Under *Franks* the presence of willful false statements in an application will not render a wiretap order invalid if there remains probable cause

even when the false statements are removed. Here, we determine that the purposes of Wisconsin's wiretapping statutes were fulfilled despite the inclusion of non-enumerated offenses in the order.

¶ 60. In the present case, the purposes of the wiretap statutes have been fulfilled and the error appears to be of no material consequence. The enumerated crimes that served as the basis for the wiretap order were crimes of sufficient magnitude to warrant a wiretap. Further, the privacy protections of the probable cause requirements under § 968.30(3) were met. There is no contention that the police intercepted any of House's communications that were unrelated to the enumerated offenses in the order, and House was charged with only enumerated offenses. Accordingly, even though we have concluded that the circuit court erred in listing the non-enumerated offenses, we determine the error does not constitute an unlawful interception such that suppression is warranted.

V

¶ 61. In sum, we determine that the circuit court erred in authorizing a wiretap for offenses not enumerated in Wis. Stat. § 968.28. However, we also determine that the authorization of a wiretap for non-enumerated offenses does not warrant suppression of the evidence obtained from the wiretap in this case. The order included both enumerated and non-enumerated offenses, and it contained sufficient probable cause for the enumerated offenses. Further, the evidence obtained by wiretap was for enumerated offenses, and charges were brought only for enumerated offenses. Thus, the failure does not conflict with the statutory objectives of protecting privacy and limiting wiretap-

ping to situations clearly calling for the use of such an extraordinary device. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 62. N. PATRICK CROOKS, J. (*concurring*). While I join the majority's conclusion that suppression of the evidence obtained from the wiretap in this case is not warranted, I disagree with the majority's determination that the circuit court erred in authorizing a wiretap for offenses not enumerated in Wis. Stat. § 968.28. I write separately because I read "dealing in controlled substances" under § 968.28 to be broad enough to encompass the allegations of money laundering, racketeering, and continuing criminal enterprise in this case.

¶ 63. Here, the offenses of money laundering, racketeering, and continuing criminal enterprise were all part of a drug trafficking operation. This conclusion is supported by the affidavit of Detective Stanaszak, which stated, "I believe that SAMUEL CARABALLO is operating a drug trafficking organization involving numerous family members and other individuals that distributes cocaine, Ecstasy (MDMA) and heroin in and around the Milwaukee area from sources located outside Wisconsin, utilizing commercial properties to facilitate these activities and likely launder the proceeds."

¶ 64. The application for a wiretap on the phone of Samuel Caraballo listed the offenses under investigation as violations of Wis. Stat. § 961.41(1)(a) (manufacture, distribution or delivery of controlled substances), Wis. Stat. § 946.41(1m) (possession of controlled substances with intent to manufacture, distribute or deliver), and Wis. Stat. § 961.42 (keeping a

place for using, manufacturing, keeping or delivering controlled substances). The application also listed violations of Wis. Stat. § 941.41(1x) (conspiracy to commit violations of section 961.41), and Wis. Stat. §§ 946.83 and 946.85 (racketeering and continuing criminal enterprises). The application further listed violations of 21 U.S.C. § 841(a)(1) (distribution of and possession with intent to distribute controlled substances), 21 U.S.C. § 843(b) (use of a communication facility to facilitate controlled substance felonies), 18 U.S.C. § 1952 (interstate or foreign travel or transportation in aid of racketeering enterprises), and 18 U.S.C. §§ 1956 and 1957 (money laundering). Although the wiretap application listed offenses not explicitly enumerated in Wis. Stat. § 968.28, it was not invalid, because it established, along with the affidavit of Detective Stanaszak in support of the application, probable cause that there was a nexus between the offenses of money laundering, racketeering, and continuing criminal enterprise, and the offense of "dealing in controlled substances" in this case. Wis. Stat. § 968.28.

¶ 65. The majority opinion states that the legislature intended that the offenses enumerated in Wis. Stat. § 968.28 be patterned after those set forth in 18 U.S.C. § 2516(2). Majority op., ¶ 22. The majority opinion quotes former Wisconsin Attorney General Robert W. Warren in support of its position that authorization of wiretapping is permissible only in certain crimes which have been listed in the federal statute. Majority op., ¶ 21 n.6 (citing Legislative Reference Bureau drafting file for ch. 427, Laws of 1969).

¶ 66. Under 18 U.S.C. § 2516(2), the principal prosecuting attorney of any state is authorized to apply to a judge for an order authorizing interception of wire, oral, or electronic communications, where such inter-

ception may provide evidence of certain types of offenses, including "dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year. . . ." The inclusion of the language "or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year . . ." suggests that Congress intended that a state, in accordance with 18 U.S.C. § 2516(2), could authorize wiretapping for a broad range of dangerous offenses, not limited to the offenses explicitly enumerated in the statute.

¶ 67.  Additionally, a closer look at then Attorney General Robert W. Warren's Analysis of Assembly Bill 860[1] evidences an intent that Wisconsin's wiretapping statute be used to fight organized crime. Attorney General Warren stated, "Today's law enforcement officers need the legal authorization to record the conversations of criminals and others who are reasonably suspected of serious crimes, and particularly organized crimes." Legislative Reference Bureau drafting file for ch. 427, Laws of 1969. The offenses of money laundering, racketeering, and continuing criminal enterprise in this case are "organized crimes" of the type contemplated by Attorney General Warren. The legislative history of Wisconsin's wiretapping statute, as well as the broad, inclusive language of 18 U.S.C. § 2516(2), support a conclusion that the circuit court did not err in authorizing a wiretap for offenses not enumerated in Wis. Stat. § 968.28.

¶ 68.  For the above stated reasons, I respectfully concur.

---

[1] 1969 Assembly Bill 860 established Wisconsin's wiretapping statutes.

¶ 69. I am authorized to state that Justices JON P. WILCOX and PATIENCE DRAKE ROGGENSACK join this concurrence.

¶ 70. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The majority opinion concludes that error was committed when the order authorized a wiretap for offenses not enumerated in Wis. Stat. § 968.28. Majority op., ¶ 2. The State specifically applied for and the order specifically authorized the interception of communications related to non-enumerated offenses. I agree with the majority opinion that the order violated the statutory requirements.

¶ 71. The majority opinion nonetheless refuses to suppress the evidence obtained as a result of this invalid order. The legislature carefully restricted the State's powers under the wiretapping statute and enacted suppression as an enforcement mechanism. Suppression is appropriate in the instant case to ensure proper compliance with statutory requirements. For the following reasons, I dissent.

I

¶ 72. The Wisconsin legislature intended,[1] like

---

[1] The memorandum submitted by Robert W. Warren, then-Attorney General of the State of Wisconsin, to the legislature considering the wiretap bill explained that although wiretapping is an extremely useful "tool," there must be "strict limitations" to the electronic surveillance authority granted to local law enforcement. Warren further explained that "I do not advocate, and indeed, this bill opposes the indiscriminate or uncontrolled or unsupervised use of electronic surveillance by law enforcement officers or agencies. . . . [L]aw enforcement usage should be allowed only upon court approval and supervision." Analysis of Assembly Bill 860 by Robert W. Warren,

Congress,[2] to circumscribe significantly the power to authorize wiretapping. Recognizing that it was granting an extraordinary power to law enforcement officials and explicitly recognizing the privacy interests at stake, the Wisconsin legislature, like Congress, carefully crafted the statute to contain precise requirements and subjected statutory violations to suppression.[3]

Attorney General, at 2, in Bill Drafting File on Laws of 1969, ch. 427 (available at Wis. Legislative Reference Bureau, 1 East Main St., Madison, Wis.).

One of the express goals of the statute was "to protect effectively the privacy of wire and oral communications," and accordingly the wiretapping statute "prohibit[s] any unauthorized interception of such communications." *See* Assembly Bill 860 in Bill Drafting File on Laws of 1969, ch. 427 (available at Wis. Legislative Reference Bureau, 1 East Main St., Madison, Wis.).

[2] "Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." *United States v. Giordano,* 416 U.S. 505, 515 (1974).

This court has expounded on the careful balance Congress sought to achieve between permitting law enforcement officials to use wiretapping and protecting individual rights in *State v. Gilmore,* 201 Wis. 2d 820, 830–31, 549 N.W.2d 401 (1996), in which the court explained that "[i]n enacting Title III Congress displayed an overriding concern with protecting privacy." *Gilmore,* 201 Wis. 2d at 830. *See also* majority op., ¶ 15 ("Congress intended that Title III be construed strictly because it knew that it was creating an investigative mechanism which potentially threatened the constitutional right to privacy.").

[3] Attorney General Warren explained the provisions allowing for suppression as follows: "These built in safe-guards provide a dual purpose—that of discouraging law enforcement and prosecutive officers as well as judges from seeking and granting electronic surveillance warrants except in selective

34

¶ 73. Contrary to the concurring opinion, the statutory language "dealing in controlled substances" must be narrowly interpreted so as not to "conflict[] with the narrowly circumscribed scope of § 968.28." Majority op., ¶ 28. When the legislature goes to great lengths to emphasize the rigor with which the law should be applied, the court ought to follow the legislature's lead. The majority opinion properly recognizes the precision with which the legislature "demarcated the crimes for which wiretaps may be authorized under [Wis. Stat.] § 968.28." Majority op., ¶ 27. The crimes of money laundering, racketeering, and continuing criminal enterprise are non-enumerated offenses and are not within the scope of the statute. Majority op., ¶ 13.

¶ 74. I agree with the majority opinion that the order that authorized surveillance for both enumerated and non-enumerated offenses was invalid; it violated the statutory requirements.

## II

¶ 75. Despite recognizing that the order violated the statutory requirements, the majority opinion nonetheless concludes that "the authorization of a wiretap for non-enumerated offenses does not warrant suppression of the evidence obtained from the wiretap in this case." Majority op., ¶ 2. The majority opinion provides no sanction for the statutory violation, thus trivializing

investigative situations, and, obviously, the safeguards protect the citizen from unjustified surveillance." Analysis of Assembly Bill 860 by Robert W. Warren, Attorney General, at 6, in Bill Drafting File on Laws of 1969, ch. 427 (available at Wis. Legislative Reference Bureau, 1 East Main St., Madison, Wis.).

the statutory enumeration of the crimes for which wiretap authorization is allowed. At this point, I depart from the majority opinion.

¶ 76.   Wisconsin Stat. § 968.30(9)(a) expressly provides for suppression of evidence for violations of the relevant statutory provisions. It states in full:

> Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of this state, or a political subdivision thereof, may move before the trial court or the court granting the original warrant to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval. The motion shall be made before the trial, hearing or proceeding unless there was no opportunity to make the motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire, electronic or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of ss. 968.28 to 968.37. The judge may, upon the filing of the motion by the aggrieved person, make available to the aggrieved person or his or her counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interest of justice.[4]

---

[4] Wisconsin Stat. § 968.30(9)(a) mirrors the suppression provision located in the federal wiretapping statute, 18 U.S.C. 2518(10)(a), which provides in pertinent part:

> Any aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

¶ 77. Suppression is appropriate under Wis. Stat. § 968.30(9)(a) when "the order of authorization under which [the communication] was intercepted is insufficient on its face." "Insufficient on its face" means, in ordinary parlance, inadequate on its face to meet the statutory requirements. The order here was plainly insufficient on its face.

¶ 78. The majority opinion interprets the phrase "an order insufficient on its face" to mean an order that has too little in it, that is, an order that is missing some important information. The majority opinion reasons that the order in the instant case does not have "too little" but instead has "too much" in it. Majority op., ¶ 37. The majority opinion concludes that the order, which references illegally enumerated crimes, merely contains "surplusage." I call an order with too much or too little inadequate on its face to meet the requirements of Wis. Stat. § 968.28.

¶ 79. Wisconsin Stat. § 968.30(9)(a) also expressly permits suppression when communications are "unlawfully intercepted." The majority opinion adopts the following standard to evaluate when a communication is "unlawfully intercepted" and a suppression motion should be granted: "[W]hether a violation of the wiretapping statutes requires suppression depends upon

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

... If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter.

whether the statutory purpose has been achieved despite the violation." Majority op., ¶ 38.

¶ 80. The purpose of federal Title III and its wiretapping provisions (upon which the state legislation is based) is, according to the United States Supreme Court, to prohibit all interceptions of oral and wire communications except those specifically provided for in the Act. "[Although] [t]he Act is not as clear in some respects as it might be, . . . it is at once apparent that it . . . limits the crimes for which intercept authority may be obtained . . . ."[5] Because of the violation, the statutory purpose of Wis. Stat. § 968.28 has not been achieved in the present case. The order does not sufficiently limit the crimes for which intercept authority may be obtained, and therefore the information garnered in violation of Wis. Stat. § 968.28 should be suppressed.

¶ 81. A somewhat differently worded test to determine whether evidence should be suppressed under federal Title III and its wiretapping provisions has been articulated by the United States Supreme Court: "[S]uppression is required only for a 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.'" *United States v. Donovan,* 429 U.S. 413, 433–34 (1977) (quoting *United States v. Giordano,* 416 U.S. 505, 527 (1974)). The majority opinion recognizes this test. Majority op., ¶ 42.

¶ 82. Wisconsin Stat. § 968.28, with a more limited list of offenses for which surveillance is permissible than the federal law, is a clear statutory requirement

---

[5] *United States v. Giordano,* 416 U.S. 505, 515 (1974).

that plays a central and functional role in achieving the legislative purpose of guarding against unwarranted use of electronic surveillance, and it directly and substantially implements the legislative intent to limit the use of intercept procedures to only a few expressly enumerated offenses.

¶ 83. Applying the text of § 968.30(9)(a) and United States Supreme Court case law, I would hold that suppression is appropriate in the circumstances of the instant case. I remain unpersuaded by what the majority opinion in essence treats as a "no harm, no foul" situation.

¶ 84. In the instant case the application and order contained no clerical error. There was no inadvertent mistake. The error is one that goes to, and directly undermines, a fundamental tenet of the wiretapping statute, namely the explicit limitation on the crimes for which wiretapping is permissible. Compliance with § 968.28 is no mere technicality. By authorizing surveillance for crimes not enumerated in the statute, the order in the instant case clearly violates the standard for suppression set forth by the United State Supreme Court in *Donovan* and *Giordano.*

¶ 85. The majority opinion is correct that there is limited authority on the issue presented. Indeed, the only case directly analyzing and deciding the issue presented in the instant case is *United States v. Ward,* 808 F. Supp. 803 (S.D. Ga. 1992), which the *Ward* court described as a case of first impression.[6]

¶ 86. In *Ward,* the order for wiretaps allowed surveillance for two offenses not enumerated in the federal wiretapping statute. The *Ward* court reasoned

---

[6] *United States v. Ward,* 808 F. Supp. 803, 805 (S.D. Ga. 1992).

that permitting the government to proceed without sanctions for the over-inclusive applications and intercept orders provides no incentive to the government to fulfill its responsibilities to comply with the statute. Suppression, on the other hand, serves the deterrent purpose of the statute and places the burden on the government to comply with the statute, according to the *Ward* court.

¶ 87. The *Ward* court decided to suppress the evidence collected pursuant to the overbroad and invalid order, emphasizing that the government, as well as the people, must obey the laws. The *Ward* court quoted Justice Brandeis' famous words on the rule of law:

> In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. . . . To declare that in the administration of the criminal law the end justifies the means . . . would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.[7]

¶ 88. I would follow *Ward* in the instant case. For the reasons set forth, I dissent.

---

[7] *Olmstead v. United States,* 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting).